| | | |
|---|---|---|
| MATTHEW J. PORCELLO and PORCELLO'S INC., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | 3:07-cv-1244 (CFD) |
| | : | |
| ROBERT J. SANTANELLA, MICHAEL KRZYNOWEK, ANJO TIMMERMAN, RONALD MARCOTTE SR. and CARL SFERRAZZA, in their individual capacities, and THE TOWN OF ENFIELD, | : : : : | |
| Defendants. | : | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Porcello's, Inc. ("Porcello's") and its principal, Matthew J. Porcello, brought this action

against the Town of Enfield, two Chiefs of Police,[1] and three police officers[2] pursuant to 42

U.S.C. § 1983 for alleged violations of Porcello's Fourteenth Amendment rights. Specifically,

Porcello alleges that he was denied equal protection by being subjected to differential treatment

than similar businesses in the Town of Enfield. Porcello also asserts state law claims of false

arrest and malicious prosecution.[3] The defendants move for summary judgment on all of the

---

[1] The Defendants Ronald Marcotte Sr. and Carl Sferrazza was and is, respectively, the Chief of Police of the Town of Enfield, and both are sued in their individual capacity.

[2] Defendant Robert J. Santanella is a Sergeant in the Town of Enfield Police Department, and is sued in his individual capacity; Defendant Michael Kryznowek is a police officer in the Town of Enfield Police Department, and is sued in his individual capacity; Defendant Anjo Zimmerman is the Deputy Chief of Police of the Town of Enfield Police Department, and is sued in his individual capacity.

[3] Plaintiffs' first amended complaint contained a claim for unconstitutional seizure in violation of the Fourth Amendment. On August 16, 2010, the plaintiffs filed an Amended Complaint which withdrew this claim.

plaintiffs' claims. The plaintiffs also move for partial summary judgment, on Porcello's claim

for malicious prosecution. For the reasons that follow, the defendants' motion is granted in part

and the plaintiffs' motion is denied.

## I.      Factual Background[4]

Plaintiff Matthew Porcello is a principal owner of a business, co-plaintiff Porcello's, Inc.,

located in Enfield, Connecticut. Porcello's holds a license from the Connecticut Department of

Motor Vehicles ("DMV") to engage in the business of selling used vehicles, automotive repair,

and towing. Porcello's is also licensed as a "wrecker service" under Conn. Gen. Stat. § 14-66,

and as such is required to comply with the provisions of Conn. Gen. Stat. § 14-150 concerning

matters such as towing and storage of motor vehicles and owner notification.[5]

There are two sets of properties at issue in this lawsuit. The first set of properties is 710

and 718 Enfield Street, where the Porcello family has operated their business since 1925. The

Porcello family has a DMV license to sell vehicles from those two locations.[6] The second set of

---

[4] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

[5] Of particular importance in this case is Conn. Gen. Stat. § 14-150(i), which requires that, after thirty days of storing an abandoned or unregistered motor vehicle, if the owner has not claimed the vehicle, the owner of the place of storage must, within ten days after that, file a notice with the commissioner "stating the make, engine number and chassis number of such motor vehicle, the date [it] was left with [the storage owner] and by whom[,] and the registration number . . . if any."

[6] Pursuant to Conn. Gen. Stat. § 14-54, "[a]ny person who desires to obtain a license for dealing in or repairing motor vehicles" is required to first obtain approval from the local zoning and police authorities for the location for which the license is desired. Because the Porcello's operations on the lots at 710 and 718 Enfield Street pre-dated enactment of the Town's zoning ordinance, the operations on those lots are generally considered by the Town to be "grandfathered" from application of the zoning ordinance.

properties is 699 and 704 Enfield Street.  Porcello acquired these two properties in 1987.  Lots

699 and 704 are not separately licensed for the sale of vehicles by the DMV, but rather are

registered as separate storage areas for the 710 and 718 properties.[7]  Specifically, an amended

"Storage Rates and Requirements" application to the DMV (dated January 21, 1988) lists 699

and 704 Enfield Street as "Storage Area[s] Different From Licensed [710 and 718] Locations."

On this application, Porcello represented that the "number of vehicles which can be stored" on

the lots identified on the applications was 20 "outside [a] building."[8]  The "outside building"

vehicle storage areas referenced are apparently the lots located at 699 and 704 Enfield Street.

There are also two sets of Town Ordinances at issue in this lawsuit.  The first Town

Ordinance is the "Zoning Ordinance," which, in relevant part, dictates the use of property as an

"accessory use" to a business.  Under the Zoning Ordinance, certain businesses are permitted to

utilize "accessory off-street parking facilities," provided such parking facilities are located within

500 feet walking distance of the business served.  Under the Zoning Ordinance, such off-lot

parking facilities are deemed "accessory" parking facilities, and are expressly restricted to be

used "solely for the parking of passenger automobiles of patrons, occupants or employees" of the

associated business.  The lots at 699 and 704 Enfield Street are considered by the Town, for the

purposes of zoning, as "accessory parking facilities" because of their proximity to the car sales

business.

The use of lots 609 and 704 as accessory lots was confirmed in 1996 by Zoning

---

[7] Porcello's is not permitted to conduct sales or repair business at 699 and 704 Enfield
Street.

[8] It is unclear whether this number refers to 20 cars total or 20 cars per lot; Porcello's
1994 Application indicates "20 699 Enfield St.[,] 20 704 Enfield St."

Enforcement Officer Wayne Bickley.[9]  Although Bickley approved the lot for accessory parking

for employees and customers, Bickley's memo specifically disclaimed any opinion regarding

whether the property violated the Blight Ordinance on "abandoned, inoperable and unregistered

motor vehicles" as "outside the scope of my enforcement as the Police Department has

jurisdiction."

The second Town Ordinance is the "Blight Ordinance."  The 2002 version of the Blight

Ordinance, entitled "Abandoned, Inoperable, Unregistered Motor Vehicles and Unsightly

Materials," in pertinent part, states as follows in § 38-143:

> (a) No person shall permit any abandoned, inoperable, or unregistered motor
> vehicle to remain located in any unenclosed area upon such person's real property
> within the limits of the town for a period exceeding consecutive 30 days.
>
> (b) Any motor vehicle that is removed pursuant to this article shall not be returned
> to the same real property unless it has been made operable and has been registered
> with the state department of motor vehicles.
>
> (c) Exceptions.
>
>> (1) Real property upon which the vehicle is located within the town used
>> for the sale of motor vehicles pursuant to an appropriate license issued by
>> the state and a proper zoning permit issued by the planning and zoning
>> commission.

The Ordinance defines "inoperable" and "unregistered" in Section 38-141 as follows:

> *[I]noperable motor vehicle* means a motor vehicle that is (i) incapable of
> performing the function for which it was designed by virtue of missing parts, or
> broken or severely damaged components, or (ii) cannot be legally registered by the
> state department of motor vehicles.
> . . .
> *Unregistered motor vehicle* means any motor vehicle, which is required to be
> registered by the state department of motor vehicles, which is not so registered.

---

[9] Bickley's memorandum referred only to lot 699, but the plaintiffs argue that this same
analysis applies to lot 704.

The 2002 Blight Ordinance states that it was adopted pursuant to Conn. Gen. Stat. § 7-148(c)(7)(H)(xv) "and is considered a blight ordinance." Conn. Gen. Stat. § 7-148(c)(7)(H)(xv) grants municipalities the power to:

> [m]ake and enforce regulations preventing housing blight, including regulations reducing assessments, provided such regulations define housing blight, and including regulations establishing a duty to maintain property and specifying standards to determine if there is neglect; prescribe fines for the violation of such regulations of not less than ten or more than one hundred dollars for each day that a violation continues and, if such fines are prescribed, such municipality shall adopt a citation hearing procedure in accordance with section 7-152c[.]

Section 38-142 of the Blight Ordinance also provides that "Any licensed wrecker service or garage shall comply with [Conn. Gen. Stat.] § 14-150, as revised, in such matters as, including but not limited to, owner notification, towing of motor vehicles, storage, and payment of service."

In 2002 or 2003, the Town of Enfield Police Department began enforcing the Blight Ordinance against Porcello's more strictly than in the past. It appears that for several years, police officers would go to Porcello's with a list of violations; ask Porcello to move the cars deemed in violation; Porcello would move the cars; and no ticket would be issued. Sergeant Santanella took over the Traffic Division in 2006, and on March 21, 2006, a meeting was held between Plaintiff, Chief Timmerman, Captain Tobin, Sergeant Santanella, and Zoning Enforcement Officer Wayne Bickley to discuss the 699 Enfield Street property. Porcello claims that at that meeting he attempted to explain that the Blight Ordinance did not apply to him.

Following the meeting, Sergeant Santanella sent a letter to Porcello in which he stated the police department's policy to enforce the Blight Ordinance, including the

following: "you were informed that the parking of any abandoned, unregistered, or inoperable vehicles in any unenclosed area on this property [699 Enfield] would be a violation of the Town Ordinance. . . . You were informed that in the future . . . you would be given a list of the vehicles in violation and that violation stickers would be placed on each vehicle. After 30 days from the notification date enforcement action will begin."[10] Porcello claims that the letter is not an accurate reflection of what transpired at the meeting,[11] and that at the meeting Bickley told Santanella that Porcello's could park an "unlimited number" of cars on the accessory lots.

Following this meeting, the police department did enforce the Blight Ordinance by appearing at Porcello's and attempting to identify inoperable or unregistered vehicles. If the car had a license plate, the police would "run" the plate, to determine whether or not the plate had expired. If the car had an expired plate or no license plate, they deemed the vehicle to be "unregistered." Santanella and Krzynowek claimed that vehicles would be listed as "inoperable" only if they "were severely damaged or missing major components such as wheels or . . . things of that nature." Porcello would then receive a "notice of violation" informing Porcello that after thirty days in the same location, the vehicles

---

[10] It should be noted that this "30 day enforcement policy" was a change from the Town's previous "60 day enforcement policy." This change apparently stemmed from Sergeant Santanella's reading of § 38-144(c) of the Blight Ordinance, which provided that enforcement "shall not apply to wrecker services until 60 days from the required filing date pursuant to [Conn. Gen. Stat.] § 14-150, *provided the wrecker has complied with statutorily mandated notification procedures* and sent copies thereof to the chief of police." (emphasis added). Santanella apparently did not consider whether or not this 60 day extension applied to Porcello's, and testified at his deposition that he did not know exactly what paperwork Porcello would have had to send to the chief of police to qualify for the extension.

[11] Porcello admittedly did not respond to this letter.

would be in violation of the Blight Ordinance, while if they were moved or brought into compliance there would be no violation.

For some time after the 2006 meeting, Porcello would move the vehicles cited as in violation of the ordinance within 30 days to avoid citation. However, on July 11, 2006, in response to a notice of violation, Porcello refused to move some of the identified vehicles and essentially invited citations. Krzynowek sent Porcello citations with a cover letter discussing the reason for the citations. Subsequent citations followed. Of the vehicles ticketed, one had been present in lot 704 since 2002 and two other vehicles had been present since 2004.[12] At no time did Porcello show the officers a tow slip, work order, or repair order for any identified vehicle to demonstrate that the vehicle was a "customer's" car and being held for repair, being held in accordance with Conn. Gen. Stat. § 14-150, or being held for sale.

It is unclear whether the defendants took into consideration Porcello's apparent twenty-car storage allotment for cars held in conjunction with the 710 and 718 car sales business when issuing citations to Porcello's. It is also unclear whether Porcello ever attempted to explain the twenty-car storage allotment. Krzynowek asserts that he spoke with Porcello about every car cited, but that he did not remember what kind of explanation Porcello provided regarding the cited vehicles. Krzynowek also never made any inquiry about whether an exception to the Blight Ordinance applied to Porcello's. Santanella asserted that he did not ever check whether the vehicles cited were required to

_____

[12] Although these vehicles apparently had been present for many years, it is unclear whether the police generally made any attempt to determine whether a car cited as in violation had been in that location for 30 consecutive days.

be independently registered, as provided in the Blight Ordinance definition of "unregistered vehicle," or whether they fell under Porcello's "general dealer registration."

Porcello received a total of three tickets that charged him with a total of twelve violations of the Blight Ordinance—each carrying a $92 fine. Porcello pled not guilty to the violations. In January 2007, the charges against Porcello were dismissed. Porcello claims that, as a result of these tickets, he has suffered financial injury. Porcello also asserts that a number of other car dealerships on Enfield Street routinely park cars without license plates in their parking lots, but have not been issued notices of violation or received tickets for alleged violations of the Blight Ordinance. Although two other garages (Bosco and Fox Hill) received notices of violations in November 2006, there is no evidence that any official from the Town of Enfield returned to these garages to ensure that the apparent violations were corrected or that either dealership received tickets.

In the First Count of the Complaint, the plaintiff asserts against the individual defendants violations of his Fourteenth Amendment right of equal protection, as well as state law claims for malicious prosecution and false arrest. The Second Count asserts those claims against the Town of Enfield. The plaintiffs move for partial summary judgment on their claim of malicious prosecution. The defendants cross-move for summary judgment on all of plaintiffs' claims.

## II.    Discussion

### A.    Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to

judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner

v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson, 477 U.S. at 248.

When examining a motion for summary judgment the Court resolves all

ambiguities and draws all permissible factual inferences in favor of the nonmoving party.

Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any

evidence in the record from which a reasonable inference could be drawn in favor of the

opposing party on the issue on which summary judgment is sought, summary judgment is

improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83

(2d Cir. 2004).  However, a party may not create a genuine issue of material fact by

resting on the "mere allegations or denials" contained in his pleadings.  Goenaga v.

March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

B.      "Class of One" Equal Protection Claim

The plaintiffs claim that the defendants have subjected them to differential

treatment by arbitrarily enforcing the Blight Ordinance against Porcello's as compared to

similarly situated businesses in the Town of Enfield such as Fox Hill Garage and Bosco's

Garage.  Defendants argue that they were not arbitrarily enforcing the Blight Ordinance or

"targeting" Porcello's, but rather that Porcello's "unique" zoning history and the number

of complaints regarding Porcello's property warranted the police department's attention.

A plaintiff may allege a "class of one" equal protection claim by claiming that the

plaintiff has been intentionally treated differently from others similarly situated to the

plaintiff and that there is no rational basis for the difference in treatment. Village of

Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A "class-of-one plaintiff[] must show

an extremely high degree of similarity between themselves and the persons to whom they

compare themselves. This showing is more stringent than that used at the summary

judgment stage in the employment discrimination context." Clubside, Inc. v. Valentin,

468 F.3d 144, 159 (2d Cir. 2006) (citations omitted). In fact, "the standard for

determining whether another person's circumstances are similar to the plaintiff's must be

. . . whether they are *prima facie* identical." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d

Cir. 2005) (internal quotation marks omitted), overruled on other grounds by Appel v.

Spriridon, 531 F.3d 138, 139-40 (2d Cir. 2008).

> Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i)
> no rational person could regard the circumstances of the plaintiff to differ from
> those of a comparator to a degree that would justify the differential treatment on
> the basis of a legitimate government policy; and (ii) the similarity in
> circumstances and difference in treatment are sufficient to exclude the possibility
> that the defendants acted on the basis of a mistake.

Clubside, 468 F.3d at 159 (quotations omitted). "Generally, whether parties are similarly

situated is a fact-intensive inquiry. A court may grant summary judgment in a defendant's favor

on the basis of lack of similarity of situation, however, where no reasonable jury could find that

the persons to whom the plaintiff compares itself are similarly situated." Id. (citations omitted).

Viewing the facts in the light most favorable to the plaintiffs, Porcello's fails to provide sufficient evidence that it is similarly situated to other used car dealerships, garages, and wrecking services in Enfield.

Porcello's has provided photographs of many other dealerships and garages in Enfield that frequently park cars without license plates in their respective outdoor lots. Porcello's contends that these lots are similarly situated to Porcello's and were treated more favorably by the Enfield Police. However, there are several notable differences between Porcello's and the other garages and dealerships in question that preclude this Court from finding that Porcello's was similarly situated for the purposes of "class of one" equal protection analysis in the summary judgment context. First, the dealerships that Porcello's claims it is similarly situated to hold a DMV license to sell cars, and thus, are exempt from the Blight Ordinance pursuant to § 38-143(c)(1).[13] In contrast, Porcello's does not hold a license to sell cars on its accessory lots 699 and 704. As for the other garages and wrecking services that Porcello's claims it is similarly situated to, plaintiffs have provided no evidence that these garages own or use accessory parking lots, as defined under the Zoning Ordinance. Because the citations issued to Porcello's were for cars parked on lots 699 and 704, not 710 and 718, the other businesses Porcello's compares itself to are distinguishable. See Clubside, 468 F.3d at 160 (finding that two development projects were not similarly situated due to different types of housing and density levels); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (E.D.N.Y. 2010) (finding that properties of different size and for different uses were not similarly situated). Furthermore, while many of the

---

[13] Specifically, Troiano Motor Car Sales, Enfield Motor Sales, Artioli KIA, Artioli Dodge, Lia Hyundai, U-Save Rentals, and Longmeadow Motor Sales.

other dealerships and garages are also located on Enfield Street, Porcello's four lots are divided

by a busy intersection—710 and 718 on one side; 699 and 704 on the other.  Porcello's unique

location differentiates it from the other businesses.[14]  See Pansy Road, LLC v. Town Plan &

Zoning Comm'n of Town of Fairfield, No. 3:05-CV-916, 2007 WL 2889456, at *2 (D. Conn.

Sept. 29, 2007) (finding that differences in traffic patterns is enough to find that two residential

subdivisions are not similarly situated).   In sum, Porcello's provides no evidence of other

dealerships or garages that use non-licensed accessory lots for storage, are subject to the same

zoning requirements, and are located at the junction of a busy intersection.  These are significant

differences that would preclude a reasonable juror from finding that Porcello's and the other

garages are similarly situated.

Because the Court finds that Porcello's was not similarly situated with the other garages

in Enfield for purposes of its "class of one" claim, the Court does not need to decide whether the

defendants have a rational basis for the alleged differential treatment.

Accordingly, the defendant's motion for summary judgment is granted with regard to the

plaintiffs' "class of one" equal protection claim.

---

[14] The First and Eleventh Circuits have held plaintiffs asserting a class of one claim in the land-use context to a higher standard in proving that they are similarly situated.  See Cordi-Allen v. Conlon, 494 F.3d 245, 251-52 (1st Cir. 2007) ("The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'") (citing Olech, 528 U.S. at 565 (Breyer, J., concurring)); Campbell v. Rainbow City, 434 F.3d 1306, 1314-15 (11th Cir. 2006) (requiring properties to be "*prima facie* identical in all relevant respects" to satisfy the similarly situated requirement) (emphasis in original).  Although the Second Circuit has not explicitly adopted this higher standard, it has relied on these decisions in finding the similarly situated requirement not met in land-use cases.  See, e.g., Mattison v. Black Point Beach Club Assoc., No. 09-4174-cv, 2010 WL 1838705, at *1 (2d Cir. May 10, 2010) (relying on Cordi-Allen); Clubside, 468 F.3d at 160 (relying on Campell).

C.     State Law Claims (Malicious Prosecution and False Arrest)

Plaintiffs also assert state law claims of malicious prosecution and false arrest.

Supplemental or pendent jurisdiction is a matter of discretion, not of right.  See United Mine

Workers v. Gibbs, 383 U.S. 715, 715-26 (1966).  Where all federal claims have been dismissed

before trial, pendent state claims should be dismissed without prejudice and left for resolution by

the state courts.  See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754

(2d Cir. 2001)  (collecting cases).  Because the Court has granted the motion for summary

judgment as to the federal law claim against the defendants, it declines to exercise supplemental

jurisdiction over the plaintiffs' state law claims, which are hereby dismissed without prejudice.

## III.     Conclusion

Accordingly, the defendants' motion for summary judgment [Dkt # 67] is GRANTED IN

PART and DENIED IN PART and the plaintiffs' motion for partial summary judgment [Dkt #

64] is DENIED.  The clerk is directed to close this case.

SO ORDERED this <u>21st</u> day of September 2010, at Hartford, Connecticut.


**/s/ Christopher F. Droney**
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**